1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANNETTE GREGERSON,

11            Plaintiff,                    No. CIV S-05-0344 PAN

12      vs.

13
     JO ANNE B. BARNHART,
14   Commissioner of Social Security,

15            Defendant.                    ORDER

16   _____/

17            The case is before the undersigned pursuant to 28 U.S.C. § 636(c)(consent to

18   proceed before a magistrate judge).  Plaintiff seeks judicial review of a final decision of the

19   Commissioner of Social Security ("Commissioner") denying an application for Disability Income

20   Benefits ("DIB") under Title II of the Social Security Act ("Act").  For the reasons discussed

21   below, the court will deny plaintiff's motion for summary judgment, deny the Commissioner's

22   cross-motion for summary judgment, and remand for further proceedings consistent with this

23   order.

24   /////

25   /////

26   /////

                                        1

I. Factual and Procedural Background

In a decision dated March 26, 2004, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has a severe impairment of a tibial plateau fracture, but that this impairment does not meet or medically equal a listed impairment; claimant does not have a severe impairment of depression; plaintiff's and third-party's testimony was credible, but did not support a finding of disability; plaintiff has the residual functional capacity to sit for six hours in an eight hour workday, stand and walk for two hours in an eight hour workday with no more than 30 minutes of continuous standing or walking;

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

1    and lift up to 20 pounds occasionally and 10 pounds frequently; plaintiff should avoid climbing,

2    stooping, kneeling, or crouching; plaintiff is able to work at the sedentary level; plaintiff's past

3    relevant work as an airline reservation agent did not require the performance of work-related

4    activities precluded by the residual functional capacity; plaintiff's severe impairment does not

5    prevent her from performing her past relevant work; and plaintiff is not disabled.  Administrative

6    Transcript ("AT") 29.  Plaintiff contends that the ALJ's conclusion that plaintiff is capable of

7    sedentary work is not supported by substantial evidence in the record; the ALJ failed to offer any

8    legitimate reason to discredit plaintiff's testimony; and the ALJ's determination that plaintiff's

9    depression is not severe is not supported by substantial evidence in the record.

10   II.  Standard of Review

11           The court reviews the Commissioner's decision to determine whether (1) it is

12   based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

13   record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

14   Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

15   Substantial evidence means more than a mere scintilla of evidence, but less than a

16   preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

17   Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

18   reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402

19   U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

20   197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

21   782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

22   detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

23   1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

24   supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

25   substantial evidence supports the administrative findings, or if there is conflicting evidence

26   supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

3

1   Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

2   improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

3   1335, 1338 (9th Cir. 1988).

4   III.   Analysis

5          a.   The ALJ's Determination of Plaintiff's Residual Functional Capacity is not Supported

6   by Substantial Evidence.

7          The ALJ found plaintiff capable of performing a wide range of work at the

8   sedentary exertion level.  AT 27.  The ALJ based his assessment of plaintiff's residual functional

9   capacity upon the medical evidence in the record as well as plaintiff's subjective complaints.  Id.

10  However, the ALJ failed to adequately analyze or consider additional medical evidence from

11  plaintiff's treating physician.  Furthermore, the ALJ improperly evaluated plaintiff's credibility.

12  As a result, the ALJ's assessment of plaintiff's abilities is not supported by substantial evidence

13  in the record.

14         Social Security Ruling 96-8p sets forth the policy interpretation of the

15  Commissioner for assessing residual functional capacity.  SSR 96-8p.  Residual functional

16  capacity is what a person "can still do despite [the individual's] limitations."  20 C.F.R.

17  §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir.

18  1985) (residual functional capacity reflects current "physical and mental capabilities").

19  "Sedentary work" is defined by 20 C.F.R. § 404.1567(a)(1996) as follows:

20                 Sedentary work involves lifting no more than 10 pounds at a time
                   and occasionally lifting or carrying articles like docket files,
21                 ledgers, and small tools.  Although a sedentary job is defined as
                   one which involves sitting, a certain amount of walking and
22                 standing is often necessary in carrying out job duties.  Jobs are
                   sedentary if walking and standing are required occasionally and
23                 other sedentary criteria are met.

24  The complete medical record and plaintiff's subjective complaints casts significant doubt upon

25  the ALJ's conclusion that plaintiff is capable of performing at this level of exertion.

26         The ALJ evaluated all of the medical evidence contained in the record.

1  Unfortunately, as it concerned the medical evidence, the record was incomplete.  The ALJ

2  provided proper reasons supported by substantial evidence in the record for giving lesser weight

3  to an initial opinion from plaintiff's treating physician.  However, the ALJ's failure to

4  supplement the record in order to fully assess a later opinion by this same treating physician was

5  error.

6         The weight given to medical opinions depends in part on whether they are

7  proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821,

8  830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional,

9  who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v.

10  Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

11         To evaluate whether an ALJ properly rejected a medical opinion, in addition to

12  considering its source, the court considers whether (1) contradictory opinions are in the record;

13  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

14  treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

15  F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

16  rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Lester,

17  81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if

18  it is contradicted by a supported examining professional's opinion (e.g., supported by different

19  independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d

20  1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In

21  any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

22  findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,

23  minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

24  non-examining professional, without other evidence, is insufficient to reject the opinion of a

25  treating or examining professional.  Lester, 81 F.3d at 831.

26         The ALJ gave little weight to the opinion of one of plaintiff's treating physicians

5

as it concerned plaintiff's ability to work.  AT 27.  Dr. Macko treated plaintiff for her knee

injury, performing surgery on October 4, 2001, as well as the later removal of a plate and screws

on October 8, 2003, that were installed as supportive hardware during the initial procedure.  AT

238.  Upon examination following the 2001 surgery, Dr. Macko found plaintiff to be temporarily

disabled and unable to work until spring 2003.  AT 184.  However, in November 2003, following

plaintiff's second surgery, Dr. Macko stated that any opinion regarding disability at that time was

contingent on plaintiff's recovery and therefore premature.  AT 234.

   In his evaluation of the medical record that followed plaintiff's 2001 surgery, the

ALJ gave specific and legitimate reasons for disagreeing with Dr. Macko's assessment of

plaintiff's disability.  The ALJ commented that Dr. Macko is not the proper source for an

administrative finding of disability, as that task is reserved solely to the commissioner.  AT 27.

In addition, the ALJ questioned the validity of the information upon which Dr. Macko relied,

observing that prior to rendering his opinion, Dr. Macko had not seen plaintiff in eight months.

Id.  The ALJ noted that objective findings at the time Dr. Macko offered his opinion did not

reveal an impairment commensurate with total disability as plaintiff's knee appeared normal and

fully healed in X-rays, with full range of motion, and without any signs of swelling or arthritis.

Id.  The ALJ found it relevant that this essentially normal finding led Dr. Macko to dictate that

follow up was no longer required and further examinations could be continued on an as needed

basis.  Id.

   The ALJ's conclusions as they concerned Dr. Macko's opinion that plaintiff was

disabled following her 2001 surgery are supported by substantial evidence in the record.  In

addition to the problems noted by the ALJ, other medical opinions contradict the conclusions of

Dr. Macko.  On July 29, 2002, examining orthopedist Dr. Pliam found plaintiff capable of lifting

20 pounds occasionally and 10 pounds frequently, able to sit for six hours in an eight hour

workday, and able to stand and walk for up to 30 minutes at a time.  AT 164.  State Agency

doctors essentially concurred with those findings on August 9, 2002, except to opine that plaintiff

1    could stand and walk for six hours in an eight hour workday.  AT 171.

2                However, the ALJ failed to properly articulate any reason for discounting the 2003

3    opinion of Dr. Macko that it was premature to assess plaintiff's impairment in light of the second

4    surgery.  On November 7, 2003, just 30 days after plaintiff's second surgery, Dr. Macko stated

5    that he could not provide a final opinion and that it was "impossible" at that time to forecast

6    plaintiff's level of recovery.  AT 234.  Given the inconclusive nature of Dr. Macko's opinion, the

7    ALJ was obligated to complete the record by acquiring additional records from Dr. Macko that

8    fully documented plaintiff's recovery or explaining in his findings the reason for their absence.

9    See Tonapetyan v. Halter, 242 F.3d 1144, 1150-51 (9th Cir. 2001)(finding that the ALJ was not

10   free to ignore relied upon opinion by non-examining physician that equivocated based upon a

11   lack of information in the medical record).  The ALJ did neither of those things.

12               Disability hearings are not adversarial. See DeLorme v. Sullivan, 924 F.2d 841,

13   849 (9th Cir. 1991); see also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir.1996) (ALJ has duty to

14   develop the record even when claimant is represented).  Evidence raising an issue requiring the

15   ALJ to investigate further depends on the case.  Generally, there must be some objective

16   evidence suggesting a condition which could have a material impact on the disability decision.

17   See Smolen, 80 F.3d at 1288; Wainwright v. Secretary of Health and Human Services, 939 F.2d

18   680, 682 (9th Cir.1991).  "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an

19   appropriate inquiry.'"  Tonapetyan, 242 F.3d at 1150 (quoting Smolen, 80 F.3d at 1288.)

20               The record is incomplete as it concerns plaintiff's recovery from her second

21   surgery.  According to the ALJ, the 2003 surgery provided no additional evidence of impairment

22   as progress notes made in the weeks following the procedure reported an uneventful recovery and

23   advised plaintiff to continue rehabilitating her knee.  Id.  However, the objective evidence of that

24   surgery, as well as the ambiguity created by the treating physician's opinion that any assessment

25   was premature created a situation where further examination by the ALJ was required.  The

26   ALJ's failure to conduct this additional examination was error.

1          Each of the reasons offered by the ALJ to discredit Dr. Macko's opinion as it

2   concerned plaintiff's 2001 surgery, supports the conclusion that the ALJ's failure to give

3   credence to Dr. Macko's 2003 opinion was improper.  There can be no concern regarding the

4   freshness of information upon which Dr. Macko relied as he had recently seen the plaintiff for

5   her complaints of continuing pain, her surgery, and ongoing post operative evaluation.  For the

6   ALJ to not gather the complete record of Dr. Macko's evaluation, in light of his stated bases for

7   dismissing his earlier opinion, is error.

8          At the hearing, the ALJ commented that it would be unlikely that Dr. Macko

9   would remove the plate and screws if plaintiff's injury had not healed.  AT 46.  The findings as

10  they concern plaintiff's second knee surgery shows that the ALJ continued in that belief.

11  However, there is incomplete medical evidence in the record to support such a conclusion.

12         In fact, the record shows that Dr. Macko operated on October 8, 2003, not because

13  the hardware was no longer needed, but rather, in response to plaintiff's continuing complaints of

14  knee pain.  AT 238.  Dr. Macko evaluated plaintiff within two weeks of that surgery.  AT 242.

15  His opinion regarding the need for further evaluation came 18 days later, only 30 days after

16  plaintiff's operation.  AT 234.  Unlike his opinion following plaintiff's 2001 surgery, there can

17  be absolutely no concern that Dr. Macko lacked sufficient relevant, objective evidence upon

18  which to base his opinion.

19         Dr. Macko recommended a final evaluation to be conducted sometime in mid-

20  November.  AT 242.  Plaintiff was not left to rehabilitate on her own with medical appointments

21  on an as needed basis as was the case following her 2001 surgery.  However, the record contains

22  no evidence of this final evaluation.  Given the nature of the procedure and plaintiff's otherwise

23  credible complaints of impairment, the ALJ was obligated to complete the record with this

24  information or explain its absence.

25         Finally, there is no other medical evidence in the record that post-dates plaintiff's

26  second surgery.  No independent medical evidence contradicts the opinion of Dr. Macko, the

1   treating physician, that assessment only one month following surgery is premature.  In the

2   absence of any contrary medical opinions, the ALJ must offer clear and convincing reasons for

3   failing to give full credit to the medical opinions of plaintiff's treating physician. Lester, 81 F.3d

4   at 831.  The ALJ offered no reasons in his findings, clear, convincing, or otherwise.

5           In addition to his evaluation of the medical evidence, the ALJ based his

6   determination of plaintiff's residual functional capacity upon her subjective complaints.

7   However, as discussed more fully below, the ALJ's evaluation of plaintiff's credibility was not

8   supported by substantial evidence.  In light of the incomplete record, the ALJ's finding as it

9   concerned plaintiff's subjective complaints was in error.

10          Generally, where the ALJ fails to provide adequate reasons for rejecting the

11  opinion of a treating physician, that opinion is credited "as a matter of law." Lester, 81 F.3d 821

12  at 834 (citing Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989).  In this case, it is clear that

13  the ALJ failed to provide a legally supportable reason for ignoring the opinion of Dr. Macko.

14  However, crediting that opinion is not appropriate in this case as Dr. Macko stated only that more

15  information was needed.

16          Consequently, remand is required in order to permit the ALJ to gather additional

17  evidence regarding plaintiff's second surgery.  Upon receipt of the evidence, the ALJ must

18  reassess plaintiff's residual functional capacity, making findings supported by substantial

19  evidence in the record and continuing the sequential analysis as needed.  In the event evidence is

20  unavailable or not provided in a timely manner, the ALJ should note this fact in his opinion.

21          b.  The ALJ's Assessment of Plaintiff's Credibility is not Supported by Substantial

22  Evidence.

23          The ALJ found plaintiff generally credible.  AT 25.  However, the ALJ did not

24  credit plaintiff's allegations regarding the level of disability caused by her pain.  AT 25.  This

25  finding was in error.

26          The ALJ determines whether a disability applicant is credible, and the court defers

9

1   to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

2   Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make

3   an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad

4   v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

5   supported by "a specific, cogent reason for the disbelief").

6           In evaluating whether subjective complaints are credible, the ALJ should first

7   consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

8   F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,

9   the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

10  medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider:

11  (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

12  testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

13  prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

14  1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR

15  55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity

16  and effect of symptoms, and inconsistencies between testimony and conduct also may be

17  relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure

18  to seek treatment for an allegedly debilitating medical problem may be a valid consideration by

19  the ALJ in determining whether the alleged associated pain is not a significant nonexertional

20  impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).   The ALJ

21  may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453,

22  1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900

23  F.2d 172, 177 n.6 (9th Cir. 1990).  Without affirmative evidence of malingering, "the

24  Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

25  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

26           The ALJ stated that the level of pain reported by plaintiff far exceeded what could

10

1  reasonably be expected given her improvement with treatment.  Furthermore, given plaintiff's

2  daily activities, as well as the absence of alternate methods of pain management, substantial use

3  of narcotics, or other physical manifestations of pain, the ALJ found plaintiff's subjective

4  complaints not credible.  Id.  Substantial evidence does not support this conclusion.

5          The ALJ evaluated the numerous medical opinions that found plaintiff to be

6  improving following her 2001 surgery.  Dr. Macko reported in October 2002 that plaintiff could

7  be expected to resume work in six months.  AT 184.  In July 2002, Dr. Pliam stated that plaintiff

8  was "doing pretty well" given the severity of her injury and should continue to slowly improve

9  over the next six months.  AT 163.

10          However, the evidence in the record shows that this improvement did not occur.

11  As a result of her continuing pain, plaintiff underwent a second surgery in October 2003.  This

12  surgery was conducted after consultation with Dr. Macko.  AT 241-42.  The ALJ's conclusion

13  that plaintiff had improved with treatment fails to acknowledge the seriousness and reason for

14  this additional procedure.

15          The additional surgery shows that plaintiff continued to experience some ongoing

16  impairment in spite of her doctors' optimistic 2002 prognoses.  As noted above, given the

17  absence of plaintiff's complete medical record, it is unclear what that level of impairment

18  actually is.  However, it must be recognized that the additional surgery undermined the original

19  opinions of Dr. Macko and Dr. Pliam that plaintiff would continue to improve.  The ALJ's

20  reliance on those opinions in light of the evidence that they were not accurate was in error.

21          The ALJ also erred when he noted that plaintiff's daily activities undermined her

22  credibility.  The ALJ found that plaintiff performed light housekeeping and laundry, occasional

23  grocery shopping, and some outdoor chores such as pruning or watering the lawn.  AT 25.

24  However, plaintiff's ability to engage in some daily activities does not compromise her

25  subjective complaints of pain.  See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004);

26  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Fair v. Bowen, 885 F.2d 597, 603 (9th

Cir.1989) (holding that one need not be "utterly incapacitated" in order to be disabled).

It is difficult to see how plaintiff's limited everyday activities were consistent with those skills necessary for productive work.  See Vertigan, 260 F.3d at 1050 (finding that plaintiff's ability to grocery shop, walk for one hour in the mall, get together with friends, play cards, swim, watch television, and read were not necessarily transferable to the work setting and did not undermine plaintiff's complaints of pain).  Plaintiff complained that all of her daily activities were affected by her knee pain.  Plaintiff's light housekeeping was limited to 30 minute blocks before she was forced to sit and rest.  AT 57, 138.  Furthermore, plaintiff's injury precluded her from performing the full range of tasks necessary to manage a household, limiting her ability to bend, reach, climb and carry.  AT 57.  Grocery shopping was limited to no more than twice a week, requiring plaintiff's husband and children to help with heavier items, AT 138, as even carrying a gallon of milk caused pain in plaintiff's knee, AT 52.

This pain eventually led plaintiff to a second surgery.  AT 49.  For the ALJ to conclude that plaintiff failed to pursue alternative methods of pain management is to ignore this second operation.  Electing to pursue surgery in order to resolve ongoing pain is perhaps the most aggressive form of pain management available.

Plaintiff has also attempted to manage her pain through the use of medication. The ALJ found that plaintiff's relative lack of narcotics use cast doubt upon the severity of her allegations.  However, the evidence in the record shows that this choice to avoid narcotics was not driven by a lack of pain, but rather, because they made her "uncomfortable."  AT 51. Furthermore, plaintiff's relative use of the narcotic Vicodin has increased since her second surgery, as she now takes up to two pills every day.  AT 58.

The ALJ is correct in his finding that there appear in the record no other physical manifestations of plaintiff's pain.  However, the ALJ fails to document the psychological impairments noted by the examining psychologist, Dr. Schmidt.  AT 205.  This psychological impairment manifested itself in lower objective test scores during Dr. Schmidt's examination,

1   AT 203-06, as well as prescriptions for anti-depressant medication from plaintiff's treating

2   family physician, Dr. Keller, AT 194.  While the ALJ correctly determined plaintiff's depression

3   was not severe, his failure to recognize its source undermines his conclusions regarding the

4   manifestations of plaintiff's pain.

5          The ALJ considered numerous factors in making his credibility determination.

6   However, those factors were not supported by substantial evidence in the record.  The ALJ's

7   failure to properly consider and evaluate plaintiff's subjective complaints of pain in light of her

8   second surgery casts significant doubt upon his conclusions regarding plaintiff's credibility.

9          The ALJ failed to properly articulate legitimate reasons for discrediting plaintiff's

10  pain testimony.  In cases where the ALJ fails to properly credit excess pain testimony, the court

11  has the discretion to establish such pain testimony as true.  Varney v. Secretary of Health and

12  Human Services, 859 F.2d 1396, 1401 (9th Cir. 1988).  This is not such a case where such a

13  result is required.

14         The ALJ's failed to consider the complete medical evidence from Dr. Macko's

15  following plaintiff's second surgery.  This surgery undermined many of the justifications upon

16  which the ALJ based his assessment of plaintiff's credibility.  As a result, any assessment of

17  plaintiff's credibility cannot be made without a complete evaluation of that evidence.  To

18  establish plaintiff's complaints as true would be improper given the evidentiary issue remaining.

19         c.  The ALJ Improperly Determined that Plaintiff's Depression was not Severe.

20         Plaintiff contends the ALJ improperly assessed the severity of her impairments

21  and failed to consider all of them in combination.  An impairment is "not severe" only if it

22  "would have no more than a minimal effect on an individual's ability to work, even if the

23  individual's age, education, or work experience were specifically considered."  SSR 85-28.  The

24  purpose of step two is to identify claimants whose medical impairment is so slight that it is

25  unlikely they would be disabled even if age, education, and experience were taken into account.

26  Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987).  "The step-two inquiry is a de minimis

1  screening device to dispose of groundless claims." <u>Smolen v. Chater</u> 80 F.3d 1273, 1290 (9th

2  Cir. 1996); <u>see also</u> <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1158 (9th Cir. 2001).  Impairments

3  must be considered in combination in assessing severity.  20 C.F.R. § 404.1523.

4            The ALJ found plaintiff's depression to be not severe.  AT 24.  In making this

5  determination, the ALJ stated that, despite treatment for depression, plaintiff appeared to return

6  to normal.  <u>Id.</u>  The ALJ also noted that an evaluation by State Agency psychologists did not

7  reveal symptoms significant enough to warrant a finding of severe depression.  <u>Id.</u>

8            On August 27, 2002, Dr. Keller, plaintiff's family doctor and one of her treating

9  physicians, noted that plaintiff complained of being depressed over the past two years.  AT 195.

10 In response, Dr. Keller gave plaintiff samples of the anti-depressant Celexa, which he later

11 prescribed on September 27, 2002, when plaintiff's complaints of lack of energy and motivation

12 continued.  <u>Id.</u>  Plaintiff later switched to another anti-depressant, Effexor, which she continued

13 to use through January 20, 2003, when she reported to Dr. Keller that she felt "normal" again.

14 AT 194.

15           The ALJ offered little analysis of the psychological disability evaluation

16 conducted by examining psychologist Dr. Schmidt, referring to it only as a foundational piece of

17 evidence for the Disability Determination Service's (DDS) assessment.  In his examination, Dr.

18 Schmidt found plaintiff to suffer some impairment in her concentration resulting from her knee

19 pain.  AT 205.  While Dr. Schmidt diagnosed plaintiff with a major depressive episode, he stated

20 that it was possibly related to some extent to her physical problems.  <u>Id.</u>

21           The DDS examined plaintiff's medical records and found that plaintiff suffered

22 from depression not otherwise specified.  AT 207.  On March 21, 2003, the non-examining

23 doctor from the DDS noted that plaintiff was mildly impaired in her ability to maintain social

24 functioning.  AT 217.  In addition, the doctor noted mild difficulties in plaintiff's ability to

25 maintain concentration, persistence, and pace.  <u>Id.</u>  These findings were consistent with Dr.

26 /////

1   Schmidt's evaluation that plaintiff's pain interfered with her "concentration to some extent."  AT

2   205.

3          The record contains no evidence of any evaluations since plaintiff's second

4   surgery.  However, it is not apparent that there has been any significant change.  Plaintiff testified

5   that her anti-depressant medication helps, allowing her to "pull [herself] up a little bit better."

6   AT 53.

7          The burden is on plaintiff at step two of the sequential evaluation, <u>see</u> <u>Tidwell v.</u>

8   <u>Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998).  However, in spite of the significant evidence showing

9   her depression and mental problems to be minor, plaintiff has offered no meaningful argument in

10  support of the claim that the ALJ erred at step two.  A mere recitation of medical diagnoses does

11  not demonstrate how the condition included in that recitation impacts plaintiff's ability to engage

12  in basic work activities.  Put another way, a medical diagnosis does not an impairment make.

13         The ALJ's failure to discuss in greater detail in his findings Dr. Schmidt's

14  evaluation does not mean that it was not considered.  The ALJ is under no obligation to discount

15  theories of disability wholly unsupported by the facts.  <u>See</u> <u>Howard ex rel. Wolff v. Barnhart</u>, 341

16  F.3d 1006, 1012 (9th Cir. 2003); <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  It

17  is plaintiff's burden to present evidence of disability at step two of the sequential analysis.  With

18  regards to the disabling aspects of her mental impairments, plaintiff failed in that task.

19         Plaintiff has failed to meet her burden at step two of the sequential analysis.  The

20  ALJ's assessment of plaintiff's mental impairment is supported by substantial evidence in the

21  record.  There is no indication that plaintiff's depression and other mild impairments have more

22  than a minor impact on her ability to work.  The ALJ's finding that plaintiff's depression is not

23  severe will not be disturbed.

24         For the foregoing reasons, this matter will be remanded under sentence four of 42

25  U.S.C. § 405(g) for further development of the record and further findings addressing the

26  deficiencies noted above.

1    Accordingly, IT IS HEREBY ORDERED that:

2    1.  Plaintiff's motion for summary judgment is denied;

3    2.  The Commissioner's cross motion for summary judgment is denied; and

4    3.  This matter is remanded for further proceedings consistent with this order.

5    DATED:  July 21, 2006.

6

7    UNITED STATES MAGISTRATE JUDGE

8

9    13
     Gregerson.ss.wpd
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26